UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIELLE HARMON,
    Plaintiff,
v.
CITY OF SANTA CLARA,
    Defendant.

Case No. 16-cv-04228-EJD (NC)

**ORDER GRANTING PLAINTIFF'S MOTION TO REMOVE CONFIDENTIALITY DESIGNATION AND GRANTING IN PART DEFENDANTS' MOTIONS FOR SANCTIONS**

Re: ECF 79, 103, 110

Before the Court are two motions to sanction plaintiff Danielle Harmon and her counsel, Michael Haddad and Julia Sherwin of Haddad & Sherwin LLP, for publicly and purposefully releasing the key piece of evidence in this case: a police body cam video showing Harmon being restrained and injured as Santa Clara police officers forcibly entered her home. ECF 103 (Officers' Mot.), 110 (City's Mot.). Also before the Court is Harmon's motion to remove the video's confidentiality designation under a court-approved stipulated protective order. ECF 79 (Mot. Challenging Confid.). There is no dispute that the method of the video's release violated the protective order, so the issues to be decided here are whether the video should remain confidential and what penalties to impose on Harmon or her counsel for disclosing it.

Because the public's interest in the video's disclosure outweighs any risk of harm, the Court GRANTS Harmon's motion to remove the video's confidentiality designation. As for sanctions, the Court finds that a civil contempt finding is not warranted, but that

1 Haddad and Sherwin must pay the reasonable fees and costs of adjudicating the protective

2 order violation. The Court therefore GRANTS IN PART and DENIES IN PART the

3 defendants' motions for sanctions, awarding reasonable attorney's fees and costs and

4 denying all other requested sanctions.

## I. BACKGROUND

Harmon sued the City of Santa Clara and its police chief Michael Sellers (collectively, "the City"), and five individual police officers over an encounter between Harmon and the police outside Harmon's house on April 12, 2016. Officers showed up at Harmon's home to arrest Harmon's daughter in connection with a suspected arson at the daughter's school. But Harmon knew the officers did not have a warrant and refused to let them in. As the officers insisted on entering, the encounter escalated to a physical struggle that ended with Harmon in handcuffs and suffering a broken leg. The incident was captured on video with a police body worn camera.

### A. The Protective Order

Anticipating a need for it, the parties stipulated to a protective order that this Court approved on December 21, 2017. ECF 27 (Protective Order). The protective order establishes the grounds and process for designating material as confidential, prescribes how to challenge material designated as confidential, and places limitations on how protected confidential material may be used and who can view it.

The protective order applies to "Protected Material," meaning "any Disclosure or Discovery Material that is designated as 'CONFIDENTIAL.'" Protective Order ¶ 2.13. To be "confidential," the material must "qualify for protection under standards developed under Federal Rule of Civil Procedure 26(c)." Protective Order ¶ 2.2. The party designating material as confidential must do so before disclosing or producing it, and must follow procedures outlined in the protective order. For non-documentary, tangible items like the video here, the designating party is required to "affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend '"CONFIDENTIAL."' Protective Order ¶ 5.2(c).

Case No. 16-cv-04228-EJD  2

1    If a party disagrees with another party's designation, the protective order lays out a process for challenging the designation. The challenging party is required to provide written notice of each designation it is challenging and describe the basis for each challenge, which triggers a mandatory meet and confer process. Protective Order ¶ 6.2. Only if the meet and confer process does not resolve the dispute may the parties petition the Court to resolve the confidentiality dispute. Protective Order ¶ 6.2.

Once material is designated as confidential, it is "protected material" to which the protective order applies. The protective order declares that a party may use protected material "only for prosecuting, defending, or attempting to settle this litigation." Protective Order ¶ 7.1. Furthermore, the protective order limits who may view protected material to the categories of persons specifically enumerated in paragraph 7.2, including the receiving party's outside counsel of record, the Court, and certain other classes of people under specific circumstances. *See* Protective Order ¶ 7.2. The general public is, of course, not permitted to view or receive confidential information. Protective Order ¶ 7.2.

**B.     The Video**

The Court has reviewed the video of the incident at Harmon's home. It is upsetting and graphic. The video begins with a view of Harmon's front door, with two officers (one wearing the body camera and one visible from the back) standing outside and Harmon visible within through the glass front door. The officer visible on camera states, "We're going to arrest your daughter for on-view charges," and asserts that the officers are going to enter the house. Harmon replies, "No, I'm not moving, and you don't have permission." After a brief exchange, the officers move to the door and force it open as Harmon yells, "No, you are not allowed to come in this house!" The video becomes shaky, but Harmon can be clearly heard protesting and telling the officers not to touch her. After several seconds, Harmon begins screaming and yells, "My ankle just broke! My leg just broke!" The officer wearing the body camera flatly responds, "Stop resisting," and tells Harmon to roll over onto her stomach.

For the next many minutes, Harmon can be heard and seen on the ground in

1    handcuffs, screaming and writhing in pain, sobbing, exclaiming that her ankle is broken,
2    asking for medical help, and eventually vomiting. The officer wearing the body camera
3    and attending to Harmon tells Harmon that she needs to answer some questions before they
4    can call an ambulance, and repeatedly tells her to calm down. The officer does not appear
5    to call an ambulance until just over seven minutes into the video.

### C. The Disclosure

In response to Harmon's discovery requests in January 2017, the City produced the roughly 19-minute video of the incident and designated it as confidential pursuant to the stipulated protective order. *See* City's Mot. at 5–6 (citing ECF 111 (Skane Decl.¶¶ 13-14), ECF 111-7 (Heaberlin Decl. ¶¶ 2–3), ECF 111-8 (Robles Decl. ¶¶ 1–4)). Specifically, the City avers that it burned the video onto a disc and affixed the label "CONFIDENTIAL" to it. City's Mot. at 6. The City sent the disc to Harmon's counsel with a letter dated January 6, 2017 stating, "Please find enclosed two DVD-ROM discs (SC0086 and SC0087). These discs and the files contained therein are being marked "CONFIDENTIAL" under the Protective Order." *See* ECF 111-7 (Heaberlin Decl. ¶ 3, Ex. A).

The parties reached a settlement agreement for $6.7 million on September 15, 2017, and submitted the settlement terms to the Santa Clara City Council for approval. *See* ECF 67 (Skane Decl. ¶ 4). The City Council publicly approved the settlement agreement on September 26, 2017. *See* ECF 62 (Sherwin Decl. ¶ 9); ECF 67 (Skane Decl. ¶ 4). Then, on September 28, 2017, Haddad and Sherwin notified the Court and defendants that Harmon and her counsel had unintentionally violated the protective order. ECF 59 (Notice of Violation).

According to the notice, Haddad and Sherwin provided Harmon with a copy of the body cam video, and Harmon publicly posted approximately 12 minutes of the video to YouTube the morning after the City Council approved the settlement. *See* Notice of Violation at 1; ECF 79 (Mot. Challenging Confid. at 2). Harmon's attorney Michael Haddad followed up the posting with "a media advisory to several media outlets, including a link to the YouTube video that Ms. Harmon had posted." Notice of Violation at 3.

Case No. 16-cv-04228-EJD          4

Haddad and Sherwin assert they had mistakenly believed the video was not produced confidentially under the protective order and did not realize their mistake until after the video was disseminated. *See* Notice of Violation 3–4; ECF 60 (Haddad Decl.); ECF 62 (Sherwin Decl.).

The mistake supposedly happened during the parties' settlement negotiations, when Mr. Haddad emailed an associate attorney at his firm inquiring about the video's confidentiality status. Notice of Violation at 2. The associate replied, "It does not appear that Defendants ever designated the body-camera incident as confidential. I checked Defendants' responses to our RFP (Set One), and Defendants do not mention designating it confidential. The file name of the video does not indicate that it is confidential. I think we're good." *Id.* Harmon's counsel did not ask the defendants' counsel about the video's confidentiality during settlement talks and took no additional steps to ascertain the video's non-confidential status. Hearing on Mot. for Sanctions (Nov. 8, 2017); *accord* ECF 111 (Skane Decl. ¶ 6). It was not until the day after Harmon posted the 12-minute video to YouTube, on September 28, 2017, that Harmon's counsel checked the physical copy of the video that the City had produced and realized it was marked as confidential. Notice of Violation at 5.

Upon realizing the video was covered by the protective order, Harmon's counsel instructed Harmon to take the video off of YouTube, which she did. *Id.* However, Haddad and Sherwin seemingly did little else to adhere to the protective order's terms even after the disclosure was noticed. While Harmon's counsel claimed that YouTube was "the only internet site to which Plaintiff had posted" the video, Notice of Violation at 5, a link to the video on NBCbayarea.com was posted on Harmon's public Facebook page on September 29, 2017 and was still available as of at least October 25, 2017. *See* ECF 111 (Skane Decl. ¶8, Ex. B). The video also remained freely viewable on websites of other media outlets that had picked up the story. *See* ECF 67 (Skane Decl. ¶ 8).

Defendant Santa Clara Police Chief Michael Sellers commented publicly on the video and the settlement agreement, including reference to portions of the video that Ms.

Case No. 16-cv-04228-EJD  5

Harmon did not post on YouTube. For example, Chief Sellers told KBCW/Nightbeat that the video Harmon posted on YouTube was "conveniently stopped right at the point that she admitted that it was an accident." ECF 83 (Helm Decl. ¶ 10). Chief Sellers also told the San Jose Mercury News in a statement that "[i]f this case were brought to court, we would have provided evidence and testimony demonstrating that our officers' actions were fully within the law and in accordance with accepted police practices. . . It's disappointing to not have that opportunity. I fully support the police officers who acted in good faith to arrest this arsonist wanted on felony charges." ECF 83-10 (Helm Decl. Ex. K).

### D. Motions Filed

After disseminating the video and filing the notice of violation, Harmon moved to challenge the video's confidentiality designation. Mot. Challenging Confid. In the motion, Harmon argues that the video was improperly designated as confidential because it was part of a "mass, blanket confidentiality designation[]," and because there was no showing that disclosure would create a particularized harm that would outweigh the public's right to view the video. *Id.* at 6–21.

In separate motions, the City and the individual defendant officers moved for sanctions against Harmon and her counsel. City's Mot.; Officers' Mot. The City asserts that the video's release cost the City significant financial resources by, among other things, forcing the City to investigate death threats directed at Chief Sellers and the involved officers, to "delay and cancel vital operations of the Special Enforcement Team" to which the officers belonged, and to re-assign officers. *See* City's Mot. at 4 (citing ECF 111 (Skane Decl. ¶¶9–11), 111-3 (Clarke Decl. ¶¶ 10–11), 111-4 (Buress Decl. ¶¶ 5–7), 111-5 (Moreno Decl. ¶¶ 4–8)). The City further asserts that the video's release caused "extraordinary stress and emotional damages to the involved officers," and indirectly hurt Santa Clara's citizens by compromising the police department. City's Mot. at 4.

On these grounds, the City seeks:

- An order finding Harmon and her attorneys in civil contempt;
- $53,724.92 in monetary sanctions, with $26,862.42 representing the

Case No. 16-cv-04228-EJD        6

quantifiable wages paid to police officers and City employees directly attributable to the video's release, and doubling that amount "to make the City whole," "measuring the loss of the work and time specifically resulting from the Video's release"; and

- $45,750.00 in attorneys' fees and costs for time spent responding to the video's release.
- An order that the City be permitted to withhold payment of the settlement funds until Harmon is in compliance with the protective order.
- An order referring Haddad and Sherwin to the Standing Committee on Disciplinary Conduct pursuant to Civil Local Rule 11-6(a)(1).

*See* City's Mot. at 14–15.

The individual defendant officers echo the City's assertion that the video caused them monetary and emotional harm, and seek:

- Payment of the defendants' attorneys' fees;
- Sanctions requiring Harmon's counsel to forfeit their fee from the settlement of the case, or else barring them from practicing in the Northern District of California for five years; and
- Payment of $50,000 to each of the five defendant officers, Sgt. Greg Hill and Officers Mitchell Barry, Peter Stephens, Mark Shimada, and Greg Deger.

*See* Officers' Mot. at 10–11.

## II. DISCUSSION

As a foundational matter, this Court has authority under 28 U.S.C. § 636(e) to exercise contempt authority, and authority under Federal Rule of Civil Procedure 37 to issue non-dispositive sanctions, with or without a finding of civil contempt. As the Ninth Circuit has noted, Rule 37 exists to ensure compliance with discovery orders, and "[w]ithout adequate sanctions the procedure for discovery would be ineffectual.'" *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 240–41 (9th Cir. 1991) (quoting C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2281 (1970 & Supp. 1988)). The Rule

Case No. 16-cv-04228-EJD 7

authorizes magistrate judges to impose non-dispositive sanctions as an enforcement mechanism for their own discovery orders. *Id.* at 241.

The question before the Court is what to do now that the video has been disclosed.

### A. Plaintiff and Her Counsel Violated a Court Order.

While the parties do not dispute this issue, the Court finds as a threshold matter that Harmon and her counsel violated this Court's discovery order by posting the police body camera video online and directing media outlets to view it. The defendants properly designated the video as confidential by producing a physical copy with the label "CONFIDENTIAL" affixed to its exterior, and by transmitting the physical disc to Harmon's counsel with a cover letter highlighting that the contents had been designated as confidential. *See* Protective Order § 5.2(c); ECF 71, 71-1 (Heaberlin Decl. at ¶3, Ex. A). Once properly designated, it was a violation of the protective order for the receiving party—Harmon and her counsel—to publicly distribute the video. *See* Protective Order §§ 7.1, 7.2. Thus, Harmon and her counsel violated this Court's order by disseminating the video online.

Furthermore, the Court rejects Harmon's counsel's characterization of the violation as "unintentional." Notice of Violation. It may be true that Haddad and Sherwin believed the video was not confidential, but the decision to widely and publicly disseminate the video via the internet was clearly a volitional decision the attorneys made, and one they made without adequate basis for believing it was permissible to do so.

### B. The Video Does Not Merit Confidential Status.

While a violation of the protective order has already occurred, the issue now is whether the video is entitled to the protective order's confidentiality safeguards going forward. As stated at the hearing on this matter, the Court finds that continued confidentiality is not appropriate, because the public interest in disclosure outweighs the harm the defendants may suffer without confidentiality protection.

The analysis is dictated by Federal Rule of Civil Procedure 26(c), as Rule 26 is both the authoritative basis for issuing the protective order and the standard articulated in the

Case No. 16-cv-04228-EJD 8

protective order for designating confidential information. *See* Protective Order ¶ 2.2 (defining confidential material as "information . . . or tangible things that qualify for protection under standards developed under Federal Rule of Civil Procedure 26(c)"). Rule 26(c)(1) states that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Importantly, in a challenge to a confidentiality designation under a protective order, "the burden of proof remains with the party seeking protection." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quotations and alterations omitted). Thus, it is incumbent on the defendants, as the party seeking protection, to show good cause for keeping the video confidential.

To determine whether good cause exists, the Court must first determine whether disclosing the video to the public will result in "particularized harm." *Id.* (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). The defendants must "allege specific prejudice or harm," and cannot meet their burden with "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Id.* (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (internal quotation marks omitted).

Then, if the Court concludes that disclosing the video will cause particularized harm, it must balance "the public and private interests" to decide whether maintaining the confidentiality designation is necessary. *Id.* (quoting *Phillips*, 307 F.3d at 1211); *see Shelley v. Cty. of San Joaquin*, No. 2:13-cv-0266-MCE DAD, 2015 WL 2082370, at *2 (E.D. Cal. May 4, 2015). To balance the public and private interests, the Ninth Circuit has directed district courts to consider the factors identified by the Third Circuit in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir.1995). *In re Roman Catholic Archbishop of Portland*, 661 F.3d at 424 (citing *Phillips*, 307 F.3d at 1211). Those factors are:

(1) whether disclosure will violate any privacy interests;
(2) whether the information is being sought for a legitimate purpose or for an improper purpose;
(3) whether disclosure of the information will cause a party embarrassment;

Case No. 16-cv-04228-EJD            9

(4) whether confidentiality is being sought over information important to public health and safety;
(5) whether the sharing of information among litigants will promote fairness and efficiency;
(6) whether a party benefitting from the order of confidentiality is a public entity or official; and
(7) whether the case involves issues important to the public.

*Glenmede Trust*, 56 F.3d at 483. However, these factors "are neither mandatory nor exhaustive," and the Third Circuit acknowledged that "the district court is best situated to determine what factors are relevant to the dispute." *Id.*

Bearing in mind the *Glenmede Trust* factors, three observations persuade the Court that the video should be made public, rather than veiled in confidentiality.

### 1. The Lawsuit and Its Settlement Are Highly Public in Nature.

First, Harmon's lawsuit and the City's settlement of it are inherently public matters that concern all of Santa Clara's residents. Under the California Brown Act, California local governments are required to publicly report "the substance" of any settlement agreements they approve. Cal. Gov. Code § 54957.1(a)(3). This requirement reflects the Brown Act's overarching philosophy that public agencies' actions and deliberations should be made "openly." Cal. Gov. Code § 54950; *see also id.* § 54953. The doctrine of public access is thus statutorily imbued into the facts of this case, which concluded with the Santa Clara City Council approving the parties' settlement. The fact that $6.7 million in public funds were spent to settle the case further implicates a public interest in seeing the video. *See Mendez v. City of Gardena*, 222 F. Supp. 3d 782, 792 (C.D. Cal. 2015) (unsealing a police car camera video in a police shooting case and noting that "the fact that [the defendants] spent the city's money" to pay a $4.7 million settlement "only strengthens the public's interest in seeing the videos").

Moreover, the City's police chief commented publicly on the video of the incident and the lawsuit's settlement, bringing the dispute even more squarely into the public eye. Piling onto the public interest in disclosure, the underlying lawsuit implicates citizens' federal and state constitutional rights vis-à-vis the operation of a public law enforcement

Case No. 16-cv-04228-EJD
10

1 agency. The public unquestionably holds a hefty interest in police force transparency, and
2 especially so when fundamental rights are at stake. *See*, *e.g.*, *Sampson v. City of El Centro*,
3 No. 14-cv-1807-L (DHB), 2015 WL 11658713, at *10 (S.D. Cal. Aug. 31, 2015) (finding
4 in the context of Rule 26(c) that "allegations of improper police treatment of minorities is
5 an issue of importance to the public").

Recognizing this case's public nature, the Court turns next to the defendants' arguments on privacy and particularized harm, and balances the alleged harm against the strong public interest in disclosure.

### 2. The Defendants Have Not Shown Particularized Harm that Outweighs the Public Interest in Disclosure.

Next, the video's contents do not generate a privacy interest or showing of particularized harm that outweighs the public interest in disclosure. The defendants' most compelling argument in support of confidentiality is that publicizing the video imperils the officers depicted in the video and compromises their ability to work undercover. *See* City's Mot. at 12–13; Officer's Mot. at 4. As the defendants emphasize in their motions, the involved officers are part of the Santa Clara Police Department's "Special Enforcement Team" ("SET"), which performs "a variety of functions including fugitive apprehension, gang investigation in Santa Clara, and providing assistance to other agencies or officers with investigations and follow-up outside the city limits." City's Mot. at 6. (citing ECF 111 (Skane Decl. ¶ 9), ECF 111-3 (Clarke Decl. ¶¶ 4–5)); *accord* Officer's Mot. at 4. According to the City, SET officers perform all duties in plain clothes, so SET's long-term effectiveness depends on "a level of anonymity." City's Mot. at 6. Cognizant of the need for some level of anonymity, counsel for the officer defendants concluded that the video's confidential designation was proper based on the California Supreme Court's decision in *Commission on Peace Officer Standards and Training v. Superior Court ("POST")*, 42 Cal. 4th 279 (2007). *See* Officer's Mot. at 4; ECF 108 (Wilkinson Decl. ¶¶ 8–10).

In *POST*, the court considered a disclosure request under the California Public Records Act and acknowledged the legitimate privacy concerns for officers whose duties

Case No. 16-cv-04228-EJD    11

"demand anonymity." 42 Cal. 4th at 301. More directly relevant to Rule 26(c), it is not uncommon for district courts to compel the production of potentiallyسسensitive police-related documents under a protective order to limit police exposure and promote officer safety. *See*, *e.g.*, *Macias v. City of Clovis*, No. 1:13-cv-01819-BAM, 2015 WL 7282841, at *8 (E.D. Cal. Nov. 18, 2015) (issuing a protective order "to protect potentially sensitive police the risks that the indiscriminate public disclosure poses to police department operations and officer safety"); *Williams v. Cnty. of Alameda*, No. 12-cv-2511-SBA MEJ, 2013 WL 4608473, at *2 (N.D. Cal. 2013); *Doe v. Gill*, No. 11-cv-04759 CW (LB), 2012 WL 1038655, at *4 (N.D. Cal. 2012); *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995).

However, even the court in *POST* reasoned that anonymity concerns do not automatically bar disclosing officers' identifying information, acknowledging that "by virtue of the visibility of their activities in the community, the identity of many officers is well known or readily obtainable." 42 Cal. 4th at 302–03. And in the Rule 26 context, a case's facts may permit or require public disclosure of potentially sensitive police-related material.

For example, in a civil rights case involving a citizen who died in police custody, the court found that videos depicting portions of a plaintiff's arrest should be publicly disclosed in redacted form. *Sampson*, 2015 WL 11658713, at *7. The videos depicted the plaintiff, certain third parties, and police officers who were named as defendants in the case. *Id.* at *6. The court found that there were legitimate privacy concerns for the third parties depicted in the videos, including a non-defendant federal agent who "primarily operate[d] in plainclothes and in unmarked vehicles" and might be exposed to heightened risk upon disclosure. *Id.* at *7. The court balanced the third parties' risk of particularized harm against the public interest in disclosure and ordered that the video be produced with the third parties' faces blurred, but with the named defendant officers' faces untouched. *Id.* at *11.

Here, the Court recognizes that the video's public disclosure could impact SET's

Case No. 16-cv-04228-EJD     12

operations, but this showing of particularized harm is outweighed by the public interest in transparency. For one thing, the events took place in Harmon's driveway, clearly visible from the public street or sidewalk where any casual passerby could have witnessed or filmed the incident. This plain sight, public operation belies the notion that SET was operating under strict secrecy. Moreover, only two officers' faces appear in the video. To the extent these concerns create a privacy interest, it is diminished because the Santa Clara Police Department is a public agency. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) ("[P]rivacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny."); *Shelley v. Cty. of San Joaquin*, No. 2:13-cv-0266-MCE DAD, 2015 WL 2082370, at *4 (E.D. Cal. May 4, 2015) ("Here, the party seeking protection from disclosure, the County, is a public entity subject to legitimate public scrutiny and, therefore, has a diminished privacy interest."). The Court also notes that there is no allegation that the video is part of an ongoing investigation. *See Shelley*, 2015 WL 2082370, at *3 (collecting cases and noting that the existence of an open and ongoing investigation typically establishes particularized harm).

Even if the potential diminution of anonymity rises to "particularized harm," it is not enough to outweigh the strong public interest in disclosure established above. Cases involving a civil rights claim against a police department should be "moderately pre-weighted in favor of disclosure" from the outset, *Soto*, 162 F.R.D. at 613, and the strong public interest relative to the minimal risk of harm here only tilts the scales more heavily in favor of non-confidentiality. The fourth, fifth, and (especially) seventh *Glenmede Trust* factors therefore weigh sharply in favor of publicly disclosing the video.

Of course, the defendants' argument is also weakened by the fact that the video has already been released, making their privacy concerns a moot point.[1] To be clear, Haddad and Sherwin should have followed § 6 of the protective order, which lays out the process

---

[1] The City acknowledges this and states, "Defendants oppose any order from this Court reclassifying the video simply because any such ruling will only reward Plaintiff's violation of the protective order." ECF 115.

Case No. 16-cv-04228-EJD 13

1 for challenging a confidentiality designation, so that the defendants' legitimate arguments
2 about officer safety could have been properly litigated. But, without wishing to reward
3 Haddad and Sherwin's disclose-first, ask-questions-later approach, the Court recognizes as
4 a practical matter that the video has already escaped to the wilds of the internet, rendering
5 a protective order less useful.

### 3. The Video Was Filmed with a Police Body Camera.

Third and finally, the video was taken with a police body worn camera, a topic the public may have interest in overseeing. Noting "the national discussion about police treatment of minorities and law enforcement's use of body cameras," the court in *Sampson* found that "[l]aw enforcement's use of body cameras" is "an issue of importance to the public generally, and to public health and safety specifically." 2015 WL 11658713, at *8–10. The Court agrees, recognizing that police body cameras can be useful tools to encourage transparency and promote public awareness of police activity. This observation does not mean that videos taken with police body cameras are automatically precluded from confidentiality protections. But this case—involving a $6.7 million settlement of allegations of constitutional violations, where the body camera captured graphic and alarming footage of police officers hurting a citizen—exemplifies how and when body cameras should be used for public awareness and agency transparency.

In sum, with only minimal showings of particularized harm going forward and a strong public interest in the video's disclosure, the Court GRANTS Harmon's motion to remove the video's confidential status.

### C. Limited Sanctions Are Warranted.

Although the video is now being stripped of its confidentiality designation, the fact remains that Harmon and her counsel violated a court order, and did so negligently. When a party violates a discovery order like the protective order here, Federal Rule of Civil Procedure 37 authorizes district courts to impose "further just orders." Fed R. Civ. P. 37(b)(2). This authority includes imposing a "sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Falstaff Brewing Corp. v.*

Case No. 16-cv-04228-EJD    14

1    *Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983). "Rule 37(b) sanctions may serve

2    either remedial and compensatory purposes or punitive and deterrent purposes," but

3    ultimately, "[t]he imposition and selection of particular sanctions are matters left to the

4    sound discretion of the trial court." *Id.* at 783–84.

5    Bearing in mind the twin goals of punishment and deterrence, and endeavoring to

6    sculpt sanctions that are reasonable, fair, and just under the circumstances, the Court finds

7    as follows.

8    First, the Court determines that sanctions against Harmon are not warranted,

9    because she reasonably relied on her counsel's advice when she posted the video online.

10   *See* Notice of Violation at 1–4. While a prudent person, even a non-lawyer, should tread

11   cautiously in disclosing potentially sensitive information, the Court finds it was reasonable

12   for Harmon to trust her attorneys' advice on the legal appropriateness of disseminating the

13   video. After all, these kinds of questions are precisely why one hires an attorney.

14   In contrast, the legal advice Haddad and Sherwin gave to Harmon was not

15   reasonable. Determining with certainty whether the video was confidential was a basic

16   predicate to permitting public dissemination, and Haddad and Sherwin's efforts to do so

17   were woefully inadequate to the point of negligence. By their own account of things, they

18   did little more than rely on an associate attorney's five-minute inspection of the video's

19   electronic files and his equivocal conclusion that he believed the video was not designated

20   as confidential. Despite both of them being present at the settlement talks, neither Haddad

21   nor Sherwin asked defense counsel directly whether the video was confidential, a

22   professional solution that easily would have avoided the problem. And more

23   problematically, there is no indication that Haddad or Sherwin took any further steps in the

24   nearly *two weeks* between the associate attorney's investigation and Harmon posting the

25   video on YouTube. *See* Notice of Violation at 5–6; ECF 60 (Haddad Decl.), 62 (Sherwin

26   Decl.). Even without the benefit of hindsight, it is clear that more caution was warranted.

27   Thus, the responsibility for the protective order breach falls squarely on Michael Haddad

28   and Julia Sherwin—not their associate or anyone else.

Case No. 16-cv-04228-EJD            15

The defendants have proposed ample creative options for sanctions, which the Court now considers in turn.

### 1. Civil Contempt

First, the defendants seek an order finding Harmon and her attorneys in civil contempt. "Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (internal quotation marks and citation omitted). "The standard for finding a party in civil contempt is well settled: 'The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply.' " *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)).

Here, it is undisputed that Haddad and Sherwin disobeyed a specific and definite court order, and the Court finds they did not take all reasonable steps within their power to comply. Haddad and Sherwin's process for ascertaining the video's confidentiality status was negligently deficient, and their minimal efforts to keep the video off the internet after giving notice of the violation are further troubling. However, in light of the fact that this order de-classifies the video as confidential under the protective order, a civil contempt finding no longer makes sense. And although willfulness is not required for a contempt finding, the Court is nonetheless inclined not to find contempt here, because Haddad and Sherwin's actions do not appear to have been willful defiance of a court order. Furthermore, Haddad and Sherwin have rightly met with embarrassment and strife from their imprudent behavior, and the Court is optimistic that this will deter future misconduct. Under these circumstances, a finding of civil contempt is unwarranted.

### 2. Forfeiture of Settlement Fee or Bar from Practice

The defendants next seek sanctions requiring Harmon's counsel to forfeit their fee from the settlement of the case, or else barring them from practicing in the Northern District of California for five years. The Court finds these options would be disproportionate to Haddad and Sherwin's wrongdoing.

### 3. Withholding Settlement Funds

The next request is an order that the City be permitted to withhold payment of the settlement funds until Harmon is in compliance with the protective order. This option is now moot, as the City has paid Harmon the settlement funds. *See* ECF 141.

### 4. Referral to Disciplinary Committee

The defendants suggest an order referring Haddad and Sherwin to the Standing Committee on Disciplinary Conduct pursuant to Civil Local Rule 11-6(a)(1). As above, the embarrassment and admonishment Haddad and Sherwin have received will sufficiently deter future misconduct, so a referral to the Disciplinary Committee is unnecessary. Furthermore, there is no record of prior violation by either attorney.

### 5. Compensatory Monetary Sanctions

The defendants ask for $53,724.92 in monetary sanctions paid to the City, and $50,000 paid to each of the five defendant officers, as compensation for the loss of work, loss of time, and other expenses resulting from the video's release. The Court finds it is impossible to disambiguate between harm caused to the defendants because of the video, versus harm that befell them as a result of public awareness of the lawsuit and settlement more generally. Video or not, there are consequences when police violate constitutional rights and a city drains its coffers to atone for it. Without being able to discern or quantify the harm caused by the video in particular, the Court finds that sanctions are not warranted to compensate the City or the individual officer defendants for emotional or monetary harm beyond litigating the violation.

### 6. Attorney's Fees and Costs

Finally, the defendants seek reimbursement for the attorney's fees and costs they

incurred responding to the video's disclosure. The Court agrees that reasonable attorney's fees and costs are an appropriate recompense and SANCTIONS Haddad, Sherwin, and Haddad & Sherwin LLP for the attorney's fees and costs that the defendants reasonably incurred litigating the protective order violation.

Civil Local Rule 37-4(b)(3) requires a party seeking attorney's fees under Rule 37 to itemize the expenses incurred and justify any attorney fee hourly rate that is claimed. The defendants' attorneys all submitted declarations itemizing their fees and expenses related to the protective order violation. *See* ECF 111 (Skane Decl.), 112 (O'Keefe Decl.), 114 (Wilkinson Decl.). In total, the declarations account for $71,756.31, as set out below.

| Attorney (rate) | Hours | Total fees | Expenses | Future costs | Total |
|---|---|---|---|---|---|
| Skane ($250/hr) | 69.9 | $17,475.00 | $1,800.00 | $7,500 | $26,775.00 |
| O'Keefe ($250/hr) | 75.9 | $18,975.00 | n/a | n/a | $18,975.00 |
| Wilkinson ($210/hr) | 87.4 | $18,354.00 | $152.31 | $7,500 | $26,006.31 |

After reviewing the declarations and supporting documentation, the Court finds the figures to be reasonable, with one adjustment. Ms. Skane's anticipated future expenses include two trips to San Jose to appear in court, totaling 14 hours in transit and 8 hours in the hearings. Skane Decl. ¶¶ 16–17. On top of those figures, Ms. Skane anticipates 5 hours "preparing for the hearings" and 3 hours "advising my clients and insurance carrier about the results of the hearings." *Id.* ¶¶ 18–19. The latter 8 hours are not reasonable given the extensive transit time claimed. The Court therefore reduces Ms. Skane's anticipated future expenses by 8 hours, bringing her total to $24,775.00. With this reduction, the remaining reasonable fees and expenses total $69,756.31.

The Court therefore SANCTIONS Michael Haddad, Julia Sherwin, and Haddad & Sherwin LLP, jointly and severally, for $69,756.31, with $43,750.00 to be paid to the City and $26,006.31 to be paid to the individual officer defendants.

### III. CONCLUSION

Given the significant public interest in the video at issue, Harmon's motion to remove the video's confidentiality designation under the protective order is GRANTED.

Case No. 16-cv-04228-EJD 18

The Court GRANTS IN PART the defendants' motions for sanctions. Michael Haddad, Julia Sherwin, and Haddad & Sherwin LLP are jointly and severally ORDERED to pay the reasonable attorney's fees and costs the defendants incurred litigating the video's disclosure, totaling $69,756.31, with $43,750.00 to be paid to the City and $26,006.31 to be paid to the individual officer defendants. These sanctions must be paid within 30 days, by March 7, 2018. The motions for sanctions are DENIED in all other respects.

Any party may object to this order within 14 days, by February 19, 2018. *See* Fed. R. Civ. P. 72(a).

**IT IS SO ORDERED.**

Dated: February 5, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge